My name is Charles Wheatley and I'm here to represent the Snake River Valley Electric Association. At the heart of this case is whether the federal antitrust laws apply to the APALE, the PacifiCorp, as held by this court in the earlier decision of Snake River Valley v. PacifiCorp, 238F3D1189. Counsel, this case is much more complex than the other ones we've heard this morning, so there's a higher risk that I totally misunderstand it. But I want to lay out what I thought I understood, and you educate me to the extent I'm wrong. I'll try. It looked to me like in our remand, we invited the Idaho legislature to change the law if it wanted to and avoid the problem. And it did change the law. And it looks like what the jury thought was, it looked to me like what the jury thought when we actually went to trial, that when Snake River applied to PacifiCorp, PacifiCorp said, and instead of coming and negotiating, Snake River sued them. Well, Your Honor, the situation was that the case that was remanded back to the trial, the legislature subsequently enacted a law on December 8, 2000. And the legislative history of that act, I think, is pretty clear, that they did not envision it as having any impact on the Snake River case. Well, that's a legal question. Well, that's a legal question. At least as to the conduct after the effective date of the act. It doesn't really matter what the legislature said. They did state that in order to try to address the issue that had been posed in this Court's first case, they set forth some standards for active control by the regulatory agencies and gave them certain jurisdiction. But it was quite clear from what they did in the legislation that they were seeking to require the actual regulation and actual decision by the regulatory agency on the merits of these questions. And that's never happened. The law has been in effect since December 8, 2000. But there has never been any ruling by the State Public Utility Commission to the effect that Snake River is not or the Pacific Corp doesn't have to provide wheeling. What about this statement on page 87 here, the excerpts by the district judge? He says, Interpreting the prior version of the ESSA, the circuit found Pacific Corp was not entitled to immunity. This is no longer the case. Not only do the amendments mandate IPUC review of Pacific Corp's refusal to wheel, but the IPUC is now undertaking that very review. No longer does the ESSA simply allow private parties to decide under what circumstances competition will be allowed. Well, I think what the fallacy in the judge's analysis of the new law was that he thought that the fact that there were some procedures set up where the State Public Utility Agency had the authority to do this or do that, that that meant that there was antitrust immunity before the state had acted. Now, one of those provisions of the state law required Pacific Corp to go in. If they were refusing to wheel, they had to go into the State Public Utility Commission and get a ruling that they were entitled not to wheel. They did that. They filed the petition. And at that point, the court, the commission ruled that it could not grant them summary judgment, that there were genuine disputed issues under the law. And at that point, Judge Below issued his order granting antitrust immunity from the date of the Act, not from the date of when the commission did or didn't do something. Mr. Wheatley, I'll just let you know where I'm coming from. Okay. This may help you focus your argument. It seems to me that the legal issue for us is whether after the amendment, the active supervision test that's required under Parker, you know, which goes back time beyond mine and mid-Cal for state action immunity, whether that active supervision by the State, which was lacking in the initial statute, is included in the amended statute. And if it is, then it would seem to me that there is state action immunity prospectively after the effective date of the Act. If the State has active supervision, but their commission is sitting on their behinds and they just haven't issued a ruling, that's maybe a different issue, but it's not an issue I don't think of state action immunity. So the way I'm looking at it, the amendments create an immunity prospectively, but I'm more concerned about the jury instructions given on the case that went to trial as to the December 8 actions. I'm just letting you know where I'm coming from. You can address. I'm just one judge on the panel, so you make your argument however you see fit. Well, let me address first your first concern, that when the Act was passed, somehow or another this created immunity, state action immunity at that point. I think it's quite clear that if you take this Court's earlier decision, which was interpreting the applicable Supreme Court decisions on that issue, the Midcal test and the two prongs, that there was no actual state action immunity until the State agencies had exercised that authority and made a decision on the merits that it was or wasn't right. And the Federal, like the Supreme Court decision in the FTCBT court case, says the second prong of the Midcal test requires that the State exercise ultimate control of the challenged private anti-competitive conduct, and so that, it goes on to say, so that the details of the rates or prices have been established as a product of deliberate state intervention. And the other two cases, the Burgett case, also expressly provided that the State had to actively go into the merits of the case before it and determine that, in fact, there was a state prohibition. That has not happened here. It's an interesting argument. So you're saying the act of supervision, to meet that prong, it has to have been implemented by some regulatory decision. It's not enough if they set up a process. I guess that's what I hear you saying. Yes. Is there any authority that says that? Yes. First off, this ---- A case that says it's not enough if there's a regulatory process that requires approval, but they haven't had to do that. Well, I think the controlling law of the case, the Snake River I, says that. And they had a particular ---- That's the first decision. Yes. But in that case, there was no process for legislators didn't have to. I mean, there was no commission that had to approve anything. Well, in that, that's true. That's true. But in the court, in describing what was required under the mid-count test with the other cases, which all say the same thing, specifically noted that there had to be a determination by the States on the merits of the particular case before it. Is that it? Is the issue really whether or not there is a mechanism which the State has to be involved in in order to grant or deny the request? As I read our decision in Snake River I, the problem was the Pacific Corps got to decide whether or not it would cede any of its customers to your client. Then the law got changed. And now Pacific Corps doesn't have that right anymore. It has to get approval of the State regulators before it can act on such a request. Well, Your Honor, I think that is not a real analysis of Snake River I, because under that case, they cited the three Supreme Court cases, which all talked about the State actually making a determination on the merits of this case. And that was repeated in Snake River I. And furthermore, there was another case that was addressed in Snake River I, and that's at page 1194. It dealt with the 11th Circuit decision in Municipal Utilities Board v. Alabama. And in that case, well, no, I think the case I'm thinking of that's more important was the Nugget case in the 9th Circuit. And in the earlier appeal, both Pacific Corps and the State argued, well, if there are a number of cases where the agency is working to decide various cases, that means there's State action immunity. And this Court rejected that argument and specifically said, well, Nugget does hold that an equivalent number of cases act as active supervision. Those cases all involve reviews of the specific conduct at issue in Nugget. Idaho Court. But isn't this section of the opinion talking about the response to the argument that Pacific Corps was making to our prior panel, that a statute might be written in such a way that the State didn't have to actually review individual applications? That's not what the Idaho legislature did in its opinion. Well, but what they have done is set up a procedure where they've said, you, Pacific Corps, don't have to wheel. Now, Pacific Corps went in and filed its papers, but the commission said, oh, there's a genuine issue of fact here. We cannot make that ruling as a matter of law. Okay. So have they set a schedule? Well, what happened? Is there a pre-trial, pre-hearing schedule? Well, there were some proceedings there. But everything came to an end when Judge Windmill below decided in his case that they already had immunity on the federal antitrust. They all sat back. They didn't care whether the case proceeded or not. Pacific Corps never pursued that case. And so they have never gotten a ruling under the exact words of the ESSA. Did your clients go back to the PUC and say, you know, we would like you to process this petition that is now pending? Well, we felt that that was their case. They had to have the obligation. But it's your client who wants the customers and the power. Yes. I don't understand why they're being so passive. Well, because in that case, we felt that the Snake River was not cut off by the passage of this act. It would only be cut off once they had got a ruling on the facts of our case. You wanted to proceed in court, not on the commission. What's that? You wanted to proceed in court, not on the commission. That's right. You removed the commission case to the federal court, and you asked for it to be dismissed. That's right. But the court denied that. And they sent it back. But the commission and Pacific Corps never pursued it there, and it was their case. Why can't today, this afternoon, go back to the commission and say, we would like you to proceed and schedule hearings in regard to that petition? In regard to their petition? They were the ones that were required to file that petition. But it's filed. I guess the question I'm trying to get at is presumably your client could intervene in the commission procedure, presumably. Well, we are and have been a party to it since it was filed. So why can't you file a motion seeking a hearing in that proceeding or a motion for some rejoinment or whatever? Well, the problem is they have their procedures before the state public utilities. Yeah, administrative procedures. Could you even get to the immunity issue or any of the related issues in view of what we have to take as a fact, that Snake River never asked for access, never asked for willing. The jury answered special verdict question three. Did Pacific Corp. deny a request by SRVEA that it be provided access to Pacific Corp.'s power lines? No. That's what happened, Your Honor. And the answer to that is that there were six separate rulings by the court below that we've briefed in our case, any one of which, had it been judged in our favor, would mean that the ruling by the jury that no answer to question number three was defective. And, for instance, the company pursued many, many times, both in its opening statement and all the way through, the question of whether or not they had immunity under the regulatory justification defense from the day one. It had nothing to do with the new statute. And they pursued that. That's an interesting issue because it was raised on you more than the 11,000. Yes, it was. As trial started. Right. It seems that it runs a little contrary, might be viewed as running contrary to our first decision. Well, that's... I understand that. That's a hard issue. But still, the only way you answer, I think, Judge Kleinfeld's concern, why are we even thinking about this if the jury said there was no refusal to deal, is you have to explain your argument, which you asserted in your brief, that the jury instructions were misleading. Well... I really think you ought to address that. Well, they're not only misleading, but it was not a proper instruction. Yeah. Did you appeal to it? Yes. And the first jury instruction, I mean, the first grounds that we say it was improper was the fact that the judge had permitted this regulatory defense, which in essence allowed Pacific Corps to have a subjective judgment in its own mind that it was compliant with the 1970 essay. I think the instruction says a reasonable belief. Yeah. What about Judge Kennedy's language from FOTO, whatever it is, FOTOTEL? Well, we think that that issue, FOTOTEL, we believe is not applicable in its facts to this case and the subsequent case by the 11th Circuit in the... Is that that Municipal Utilities Board case that you were talking about? Yeah, the PG&E case, in fact, has set that case aside as a ruling precedent. But here's the problem. If that regulatory defense argument by the company was made, and they made it about 40 times in their opening statement and during the trial and the closing statements, the jury reading question number three could say, well, if they have immunity because they are complying with the State statute and that means they don't have to wheel, they could easily, I think, have decided question number three with a no. Okay. There are other, a lot of... It seems to me that question three has nothing to do with the immunity, and it doesn't ask the jury to consider the immunity. It just asks factually, basically, did you ask? Did Snake River ask? And... Well, one of the big, there are a lot of other problems with it. The Court erred, I think, in excluding the stipulation that had been offered during the trial by Pacific Corps at the time of a preliminary injunction order where they stipulated that they would take over the contract of Enron if Enron decided the preliminary injunction were not issued and Enron folded out. That argument showed that, in fact, at that point, they were refusing to wheel. Well, I have a problem with that. Let me tell you what. I read their stipulation. I read what the judge cited of it. I may not have seen every place in the record where they made a statement. And so they may have made an admission that I didn't see. But the mere stipulation itself that saying we will replace the Enron power if that contract is canceled, if it's determined we violated the antitrust law, doesn't necessarily prove that they're admitting that they refused to wheel. It could mean we don't admit we refused to wheel. If we did refuse to wheel, alternatively, we don't admit it was illegal. And we're putting the plaintiffs to their proof. If they prove an antitrust violation, which includes a refusal to deal and that the refusal was unlawful, we're going to cover the power so you don't need to give an injunction to stop irreparable injury. The stipulation itself just doesn't seem logically to necessarily show an admission. Well, at the time, and I was there at the conference, it was clear that the company was refusing to wheel, that the district court knew they were refusing to wheel at that point. It was clear to you, but not to the jury. Well, no, wait a minute. The problem is the jury never got to hear the evidence, Your Honor, because the judge granted a motion in limine, which precluded any evidence being coming in as to what their position was at that time. The judge excluded evidence about their prior stipulation. That's right. I read the judge's, the judge has some language in his prior orders that sounds like he's saying that they were refusing to wheel or they were saying it. So I understand where you're coming from on that. All I'm saying is logically the stipulation in and of itself doesn't necessarily show an admission. Let me tell you what bothers me about the instruction, and you can maybe address it. All right. We're taking you over your time, but it's an important case, and I think my colleagues will certainly permit it. For one thing, the district court went outside of the normal pattern ABA instruction on essential facilities, as I understand it. And that's not to say a judge can't do that, but those standard instructions are pretty, they're pretty carefully vetted by both the plaintiff and defense bar. And it's somewhat unusual, it seems to me, if the judge goes off the trail. He better be right. And what bothered me about his instruction specifically was he lays out elements of an essential facilities claim. He adds in the third element that Snake River Valley, you know, that it requested and Pacific Court denied access, which isn't in the pattern instruction. Although I think the pattern instruction does include something that that access was denied. But then after laying those elements out, it goes on to say, and I'll quote this, it's at page SER 0162. Pacific Court responds to these claims as follows. And that A, with respect to elements one and two, SRVEA could have economically constructed their own facilities, etc. With regard to element three, SRVEA never made a proper application to use Pacific Corp's power lines and filed this lawsuit before Pacific Court could evaluate the request. Well, basically, he's laying out the elements of the claim in the jury instruction. And immediately after, he's putting Pacific Corp's argument. He doesn't have the plaintiff's argument. He doesn't have both sides' arguments. I don't know what the heck this paragraph's doing in here. I mean, this really troubles me, and I will address my concern to the appellee's counsel. But I thought this is something that you have a fair argument on. Yes, well, I think you're correct that that section of the instructions was not put in there. It's the one that the ABA had required, and we had sought it, too, would have been simply, do they have the ability to convey the power for you without any harm to their other interests? And that was left out, and this one was put in, which was geared to something that's really legally irrelevant, and that is that you have to prove at the time you file a complaint that they were refusing to wield. Their whole history for three years prior to that time, and we have the documents of the numerous conferences that took place with the company, they said flat out that they were not going to allow Snake River to serve any of their customers or to compete for any of their customers.  They sought to say that we had to accept an application to file a tariff at the Federal Energy Regulatory Commission, and if we didn't accept that and go with it, this was after we had sent to them on December 18, 1995, a complete proposal to wield, a very explicit proposal for wielding services. And what came back from the company was a set of their tariffs, FERC tariffs. Well, those FERC tariffs had expressly put provisions in them that said that Snake River, they said that any entity that is not in operation as of the date of the Act, which was the end of 1992, October of 92, is not an eligible customer. And so it was quite clear to us when we read those tariffs, and I've been a lawyer for the FERC for many years, they were not eligible customers under any of the tariffs. There were actually three tariffs, and if you view all three of them, even the company's witness, Mr. Persichetti, agreed that we were not an eligible customer under any of those three tariffs. So what, in fact, they were attempting to do was to say that we had made a filing at the FERC and therefore we had not made a proper application. And that was a misstatement of law at the time of the case, and we had sought to have that point elucidated, but the Court never ruled on the legal issue. What was the process by which these jury instructions were finalized? You said you – did you make an objection to this instruction? Yes. And, I mean, did the judge – was there any process where – I mean, are there other instructions that I don't have before me where it says, like, the plaintiff contends something? We submitted our instructions to the jury as we had some on the essential facilities doctrine to the judge prior to the trial, and he – Rejected your instructions. Yes, he rejected them. I don't have another question. Okay. I thank you. Thank you. Thank you. May it please the Court. My name is Fred DeLange. I represent the State of Idaho. I'm going to take a few brief minutes, five minutes, hopefully, to talk about state action doctrine and then leave the rest of the time for Mr. Rasich, who is counsel for Pacific, to talk about a number of these other issues. Usually the first guy uses 19 and a half out of the 20 minutes, and then the second one gets to say who he is. I think you really want to be limited to five? You just want to deal with state action, right? Yes, Your Honor. The State's interest. Yes, Your Honor. The State has been involved in this strictly with respect to the state action doctrine. We didn't appear at the trial. We're not here to – Clerk, please make the light turn red when it hits 14. Thank you. In fact, there are two arguments that the State has addressed in its brief, state action and whether the amendments to ESSA violate the contract clause of the United States Constitution. And we're prepared to just rely upon what we've said in our brief about why we do not think that the amendments to ESSA violate the contract clause, of course, unless the Court has questions. I don't have any questions on your briefing on those issues. Okay. I don't know about the other panel members, but I do have a question. What's the story with the commission? Is it just never going to have any further process because of what's occurred or what's going on? Well, the commission denied both Snake River's motion to dismiss and the Civic Corps' motion for summary judgment, said we need a better record. There's factual disputes, and you need to present us a better record that we can rule upon it. I – as a – in fact, in preparation for oral argument, I called counsel for the Public Utilities Commission. I don't have direct responsibility. And they said, well, the commission cannot act until it has a better record, and it's directed the parties to provide that record. They haven't done it. There are procedures within the rules of the commission to notice up depositions, to – my understanding is to request status conferences, to move this along if it's something that they want to do. It's not for the commission to say we're – you know, we're just going to rule anyways. They need a better record. They're waiting for one upon which they can rule. You're saying that the commission has not acted because Snake River has not complied with the commission's requests for supplements to the record. Well, my understanding is it's not just Snake River. It's both parties. The commission wanted more facts. First of all, it wanted them to present a stipulated set of facts. Apparently, they're unable to do so. But what the commission's ruling – I think it's a tab in the record for the Idaho excerpts record. I think it's tab 144, exhibit E, that said we need some stipulated facts. We see factual disputes. That, to me, is the real problem. What if they don't agree and they won't stipulate? The commission just will not act until there's a stipulation. Well, the commission can't rule now. One says the light is green. One says the light is red. They won't stipulate that it's red or green. And so they can never get a trial? No. Because there are – I believe there are other ways that you could approach the commission and to move the process along. The commission is saying – what the commission is saying is we don't have a record upon which we can rule upon your motion for summary judgment, Pacific Corps, and Snake River, your motion dismisses is improper and we're going to dismiss it. You know, you start off with a statute that looks pretty good for state action of unity. It looks like the legislature is reading Snake River I, and they're inserting themselves in as an active supervisor. But if it turns out they're just sort of like a, you know, a flimsy puppet that doesn't do anything and has no process, it really raises the whole question about whether the state action of unity should be applied, although I don't know if we have an adequate record to assess that. I appreciate the concern. I don't think – I think the record actually shows the opposite. We attached to our brief a number of orders that the commission has ruled upon relating to territory allocations, divisions of customers, the sale of facilities that the commission has ruled upon. The legislature took to heart this Court's invitation and two months later had an extraordinary session.  And read every single concern that this Court said with respect to active state supervision and changed the law to address each one of them. Now, it is simply not the Ninth Circuit precedent or Supreme Court precedent that state action only applies after there's an actual decision of a specific conduct. In other words, you don't get state action of unity just only after the commission finally rules upon Pacific Core's petition. State action looks about is the state in control of what's going on with the anti-competitive policies of ESSA and is it acting upon them. Nugget cited those – Nugget Hydroelectric cited those decisions saying not only is there a regime in place, but is the state actually doing something about it and cited those four decisions as evidence that the state has established a regime to supervise and is in fact supervising. I think that's the case here. No longer can you – no longer can you opt out of competition. No longer can you have any sort of contracts of divisions without commission approval. And when you decline to provide retail wheeling, you have to go to the commission for approval. And that's what's been – that's what's happened here. I think I understand. Maybe there's a misunderstanding. Did you want to spend four minutes arguing or 16? Actually, no. I want to – I want to include right about now, unless the Court has other questions. I think Pacific Core has got some explaining to do as well. Thank you, Your Honor. It's got some explaining to do. That means instead of saying counsel, I'm supposed to say Lucy. Right. I think that's a commercial. Good morning, Your Honors. My name is Mark Rasich. I'm with the law firm Stoll Reeves, LLP. I represent Pacific Core. I think Judge Kleinfeld hit the issue for us on the head when he said that Pacific Core responded to the only request we received, come and talk to us. We don't know exactly what it is you want, and then we were sued. I think the appeal in this case makes clear that Snake River is seeking, in essence, to impeach a jury verdict which found at the conclusion of a two-week trial that Snake River – I'm sorry, that Pacific Core had not in fact denied Snake River's request for wheeling services by focusing the Court's attention on damages and affirmative defense issues. But this Court need not even reach those issues until it first determines that Judge Windmill made some reversible prejudicial error in his rulings related to liability. Well, let me tell you what the part of this case that bothers me. You can at least have a chance to address it if you care to. I'm not concerned about the State action immunity prospectively, about that summary judgment. I think the law is as the State has argued it. And I'm not very inclined to think that we can reverse a jury verdict over evidentiary issues. But it seems to me jury instructions are right at the core of a jury trial. And you don't get a presumption of what the jury did was right if the jury is improperly instructed. And here, there are two issues in the instructions that raise some pretty serious antitrust law issues as I see it. One is the instruction on essential facilities where the Court departed from the standard ABA instruction and also added this paragraph, which I just don't understand. And I hope you can shed some light on that. And the second is this affirmative defense for regulatory action coming out of the State. And what the scope of that exception is. So. Roberts. Okay. I'm sorry. I'm just one member here. Let me address the first concern first, and then I'll turn to the State action immunity regulatory. It would be helpful as you do this, you refer us to the pages of the supplemental excerpts of records so we can be following along. Right. I'll do it as best I can, Your Honor. With respect to the first issue, which is the adequacy of the jury instructions. I think it's instructions at SER 0161 and 0162. Correct. That's instruction number 15, Your Honor. First, as a procedural matter, it's simply inaccurate to say that Snake River preserved its objection to that instruction on appeal. There were two informal jury instruction meetings, and then there was a formal one. At that formal meeting, Judge Windmill expressly told counsel for Snake River that they needed to make whatever objections they had on the record because any discussions that took place in the informal discussions were obviously not on the record. In fact, he granted a recess to allow Snake River to collect its thoughts and come back and put its objections on the record. When it did so, the only objection it made to instruction number 15 was to the second sentence, I'm sorry, the last sentence in the second paragraph of that instruction. That sentence reads, on the other hand, even if monopolization even if a monopolist may refuse to deal if valid business regulatory justifications exist for that refusal. Which page are you on, Your Honor? I'm sorry. That's SER 0161, Your Honor. 0161. That's the first page. I'm not dealing with the second, the even if a monopolist sentence, on the other hand. Yes, on the other hand. So what about this paragraph at the end of the instruction? Is there any objection? There was no objection to that paragraph, Your Honor. And where on the record did we find this colloquy about if you have any objections to the final instructions, make them now? Let me see if I can find that really quick for you, Your Honor. Your Honors will have to help me out, but I believe that it's in the excerpts of record at page 184. That would be Snake River's excerpts of record beginning at or about page 184. I don't have the full record in front of me. I just have the site. I'll take a look at it. ER 184. I'll have that. I can grab it quickly if you'd like, Your Honor. Do you want me to grab it and read it? Why don't you? I think it would be helpful. I don't have it. Oh, you mean it's right at your desk? Yeah, get it. Can I take a look at it? I don't have that one. ER 184. I'll look at it after you. We're looking at the wrong book? Yeah, the second book that Snake River submitted is where you'll find the discussion. You know, if you just give me the page number and read it, is it concise? Let me just find the exact location, and then I'll tell you how concise it is, Your Honor. It's not that I don't trust you. No, that's okay. You're an advocate. I've got to take a look at this. Okay. It actually starts on 182. 182. Which book? Again, that's the second book submitted. See, I don't know what is the second book he submitted. I've got a book here labeled Supplemental Excerpts of Record of Appellant Snake River. That's the book. Is that the book? It should be at page 182, Your Honor. Okay. That book, as far as I could tell. That's the one we were looking at. That's the one we were looking at. Okay. So at page ‑‑ I'm sorry, at line 6. Okay. The court has already provided counsel with a set of instructions. Right. I've had two different sessions to go over these informally. Recall that, of course, everything else ‑‑ This is your opportunity to state for the record any objections you have. Recall that what we discussed informally was not on the record, and therefore you'll need to either restate it or make some generalized objection to incorporate that. And then on 184, he gives them a recess to do it. Is that what you're talking about? Yes, Your Honor. Okay.  Then when he comes back, it's actually ‑‑ I'm sorry, Your Honor. 184 gives 10 more minutes or whatever. 184 actually ends up, yeah, with the 10 more minutes. Where do you guys come back? Do we have on the record what was said after the 10 minutes? Yes, Your Honor. Okay. So on page 185, Your Honor. I've got it. Actually, it starts on the bottom of 184. Thank you. That helped. I think we can make this very brief. On instruction 15, we object to the last sentence on paragraph 2. And then it goes on to say, I'm sorry, on objection which one? 15. Then the next one is on instruction 19. So the only objection made to instruction 15 is the one sentence that I was mentioning. It's on the bottom of page 184. Right, 184. Okay. Okay. What about the instruction about the regulatory ‑‑ about your affirmative defense? That's instruction number 18. And there was a general ‑‑ generalized ‑‑ I'm sorry, a generalized objection to the entirety of the regulatory justification defense, Your Honor. But the regular ‑‑ The problem is you never get to it because the jury said they never asked. Correct, Your Honor. It better just be a defense. If they had asked and you said no. And to address the question about the paragraph at the end of instruction 15, I don't specifically recall what the discussion was with the court as to why that paragraph would be there. But I submit to Your Honor that it's not reasonable to assume that the jury got all confused when it had four or five specific elements of a claim, of Snake River's claim, and then two instructions later had a full explication of the regulatory justification and each and every one of the elements that the Civic Corps needed to prove to establish that defense. Your Honor, I think the next question you had asked me is about the state action immunity defense ‑‑ state action immunity doctrine as it compares to the regulatory justification defense. What's strange here is that, okay, you guys lose on ‑‑ the Civic Corps loses on state action immunity. Right. The first go around. The case goes back. Now it goes through more proceedings. We're talking years from when the suit was filed. And right as it's going to trial, the Civic Corps asserts a new affirmative defense, and the court allows it, which is somewhat questionable at that late date. But the court allows it, and it's basically saying, if you reasonably relied on what you thought the state law meant, you can't be liable. And that just seems somewhat bizarre. And I realize Foto Tell says what it says, but it just seems to totally undercut the ruling in Snake River 1. Instead of there being immunity if the state has active supervision, it's saying there's immunity if the state has something less than active supervision, but the Civic Corps reasonably, subjectively thinks they're okay. Two responses. Number one, to address the timeliness issue, it's not the case that Snake River didn't know about our reliance on ESSA and the regulatory justification doctrine until we raised it midway through trial. We raised it on numerous occasions in briefs. Motions for summary judgment had oral argument about it. They submitted briefing about it. And so the issue was there. It is true that the oversight in terms of whether or not it was actually pled in the answer to a complaint that was filed multiple years back didn't come up until the middle of the trial. I take it from the amendment of your complaint as you went to trial that the district court here didn't have a formal pretrial order with specific contentions that superseded the complaint. Right. Like in the Western District of Washington. I don't believe it did, Your Honor. In any case like this that would go to trial with almost every district judge's standing orders, there would be a pretrial order where parties laid out admitted facts, contentions, issues, you know, blah, blah, blah. There wasn't anything that extensive, but I do think Judge Windmill tried to do that to some extent in some of the jury instructions that he laid out, the procedural history and some of those things, to inform the jury of what happened, where the parties were. And, in fact, that may be part of the reason for the paragraph at the end of Instruction 15 to sort of. . . You don't have what we had practicing in this district, which would be frequently a 100-page pretrial order that would lay out in exhaustive detail all of the remaining contentions, what issues were in factual dispute, that sort of thing. Admitted facts issue. . . Nothing like that, Your Honor. The case. . . We didn't do that in the last meeting when I was practicing. Well, the case was progressing so sort of in fits and starts that it never actually, until we were actually trying it, it wasn't even clear that we were going to try it. There was questions about calendar. There was questions about what issues were still available. I wanted him to go to trial. We used to burn up a lot of time. So. . . The problem with Instruction on 15 for me, although if there's no objection to it, I'm not sure it's the ground for reversal. It may be that we have to forget about it. But it seems like in instructions, normally the court's giving, on the instructions, giving the law. And here the judge is, after giving the law of the elements of the claim, basically launching into a paragraph on Pacific Corp's position, which, if I were a juror, just reading it, frankly it's confusing to me as I read it, whether what he's saying is what Pacific Corp's argument is, or whether if you were a juror you'd think that this was part of the instruction about what the law was. I just find it very unusual. And I don't think it's appropriate. But if there was no objection to it, I don't know if it's reversible error as plain error. So that's just something that I'll think about. I don't know what others think. Okay. Go ahead. Roberts. Okay. Well, in response to that comment, Your Honor, I would suggest that the first sentence of that paragraph or the first phrase says Pacific Corp responds to these claims as follows. So. . . I know. But what's the judge given a response to the claims? He's given jury instructions of the elements of a claim. He hasn't given the plaintiffs support for the claims. He doesn't say, here's the elements of the claim, and now plaintiff contends these elements are shown by blah, blah, blah, and Pacific Corp responds to these claims, da, da, da, you know. Well, I mean, those are the elements of their claim is what Snake River is claiming. They wouldn't be there if they didn't claim the five elements or the four elements of their essential facilities refusal to deal case. Pacific Corp never made a proper application. So that's in that paragraph. Right. Where is that in an element? There's nothing in the elements of what you need to show that there's an essential facility claim that talks about a proper application. You have to show that access to the facility was denied, among other things. But there isn't a requirement of, quote, proper application. That was Pacific Corp's argument. Maybe Pacific Corp could ask for an instruction on that if they think it should be the law in this kind of a case. But if it was objected to, I would think that's improper. I view the paragraph as more evidentiary than elements. So I just don't understand what it's doing there. But, look, I'm just a lawyer who became a judge. So, you know, we all have our views. Well, let me just make sure I understand, because as I read the first paragraph of Instruction 15, isn't that what the judge is doing in setting forth what the plaintiff's contention is? Yes, Your Honor. And then he sets forth the elements, and then at the end of it, he provides what the defendant contends by way of defense. And I think this — thank you, Your Honor. This is what I was saying before, and I think is Judge Winrell's attempt to solidify for the jury what's out there, what's at stake, what has to be decided. This is the first page, 161, is what Servia claims. The second page, the last paragraph, is what Pacific Corp claims with respect to those things that Snake River claims. But isn't an element of an essential facilities claim that there be a, quote, proper application, whatever that means? Isn't an element that Pacific Corp needs time to evaluate before they're sued? I think it's certainly either an explicit or at least an implicit requirement that there's a request made and that it's denied, because otherwise you don't have a refusal to deal. Logically, there can't be a refusal. It can't be a refusal. They never ask. Let me ask you about something sort of related. When I was a district judge, I remember that there were a bunch of cases saying that the court of appeals only reviewed errors in instructions for abuse of discretion and that the district court had broad discretion in the manner of drafting the instructions. Is that still the law of the Ninth Circuit? That still is the law, Your Honor. In fact, in McDowell v. Calderon, I believe this circuit essentially instructed district court judges to use their minds and not just follow blindly whatever models, jury instructions were there. That's the way I remember it. They started to refer to you. Yes. To copy forms. And craft it to the facts of the case, which is, I think, what? That was McDowell. Instruction 15. Yes. That's cited in our brief, Your Honor. McDowell v. Calderon. Don't we have Ninth Circuit law that says if a jury instruction is not objected to, that that normally can't be grounds for appeal? Well, Federal Rule Civil Procedure 51 requires you to, you know. I think our cases make it pretty much just roadkill if it's a civil case.  Larson, behind me, we cite in our brief. That's what I thought was the response. The other thing I remember when I was a district judge running across one time, and I can't remember where it was, was something that preserved in the Federal Rules, the old English rule, that the Federal district judge was actually free to comment on the evidence. Is that still there somewhere? Nobody ever did it, but it was there. I don't know if that's the case or not, Your Honor. I didn't look into that. I think it is still there. I think it's permissible. Do you happen to recall where it is? I don't, Your Honor. Isn't it in the Rules of Evidence? Is it in the Rules of Evidence? I think it is. I think it's in the Rules of Evidence. I remember reading it and thinking, wow, I had no idea. I'll take Your Honor's word for it. It can be distinguished from, you know, misstating the law if you did. But basically, I think if there's no objection to a jury instruction, then it stands. Okay. Do Your Honors have any further questions? I don't. I don't. Thank you. I have one final question for your colleague, Mr. Wheatley. Is there anything in the record that would contradict this page 185 we looked at, which seems to suggest that the only objection taken on the record to instruction 15 was the one sentence that says, on the other hand, even a monopolist may refuse to deal? Yes. I'd like to refer you back to what is 183, where Mr. Huntley, on behalf of Snake River, stated that we object to the failure to use our plaintiff's proposed, and we call them exhibits, these were our proposed instructions.  What? All the instructions? These were the ones that we objected to, and they went right to the heart of this instruction he used. Wait a minute. This is a line about exhibits. Where's the one about instructions? Well, it's exhibits. When we filed them, they apparently were given, in his mind, that designation. But these were our numbered instructions that we had. And even though this line here that says we object to the failure to use our proposed exhibits, many lists, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16 of them, those are actually instructions. Yes. Those are instructions. But the instruction 15 that was given is that that's not listed in here, right? Or did you do one of these? Well, what he, yeah, his instruction where he had the 15 was one of our, on our numbers, was covered. And which number was it? Do you know which one it was of these? I'd have to check, but that is true. It doesn't help me much. It's too general. I'm thinking when I was a district judge, sure, everybody objected to my not using their forms. But that didn't tell me what their objections were to the set I'd give them. The way I would do it, each side would submit proposed instructions. I wouldn't use either side's set. I'd stay up late the night before writing a set of instructions, get my secretary to type them up and Xerox them, give them to the lawyers, and we start from that. We start from my set. And what I'm asking them when I ask for objections is what legal error am I making in the instructions I'm going to give? You show me an error, I'll fix it. But just telling me you would have been happier if I'd just done what you said a couple weeks ago, that doesn't help me at all to identify an error and fix it. Well, the procedure that Judge used here, we had long discussions off the record about all these things. And all these details were gone into, and then he wanted to get on the record. Off the record is off the record. It's not.  So I understand that. I understand that. Doesn't that put the onus on the lawyers, when they do go back on the record, to be specific with regard to the exceptions they're making? Well, we thought we were being specific by mentioning the exact instructions that we had, which conflicted with his instruction. And we had talked about them earlier, and they're in this set of numbers here. You showed me that you would have been a lot happier with 16 instructions you gave me a couple weeks ago. And I'm supposed to know that there's something besides that single sentence of your instruction that you don't like. I think the detail of that, Your Honor, had been at Judge Windmill's request, discussed off the record. And then we got on the record, and it was just a total. To me, it's off the record. But in my mind, that doesn't excuse counsel's failure to be specific with regard to what the base is. Well, we thought by referring specifically to our instructions, which had the proper rules. I'm suffering a problem. I'm not putting myself in the lawyer's place right now. I'm putting myself in the judge's place. And I'm thinking, how is the judge supposed to know he made a legal error if you don't tell him in language addressed to his instruction? And if what you tell him is that you don't like this one sentence, it seems to me if I put myself in the judge's shoes, I'm going to look at the sentence and say, did I make a mistake in that sentence? Should I strike it? Well, Mr. Huntley did make a specific objection to the format of the ---- Which tells me he knew how to make a specific objection when he wanted to, but he didn't make a specific objection. Well, what he did with his format was to say that the way of sending them out was also not proper. And so ---- Did he make a specific objection to the instruction that was the regulatory defense? Oh, absolutely. That one was ---- I mean, did he make it on the record when the judge said you got to ---- Yeah, that's in the record because he says here on page 183, we object to all of the instructions relative to the regulatory justification defense on the basis of the points in the brief we filed on February 14th, the brief we filed on February 16th, and the brief we filed this morning on February 17th. And those are all detailed problems with the regulatory justification defense. Okay. That one was preserved. Thank you. Thank you, counsel. Okay. Snake River is submitted. We're recessed until 930 tomorrow morning. All right. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Yeah. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Kleinfeld, Gould, Tallman